UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
SAN ANGELO DIVISION

AMANPREET SINGH AJRALL,

   Petitioner,

v.

PHILLIP VALDEZ, et al.,

   Respondents.

No. 6:26-CV-063-H

## ORDER

In *Buenrostro-Mendez v. Bondi*, the Fifth Circuit held that aliens who are present in the United States without previously being admitted by immigration authorities—also known as "applicants for admission"—must be detained under the INA. ___ F.4th ___, Nos. 25-20496 & 25-40701, 2026 WL 323330 (5th Cir. Feb. 6, 2026); *see* 8 U.S.C. § 1225(b)(2)(A). Amanpreet Singh Ajrall, a native and citizen of India, is one such alien, having illegally entered the United States roughly two years ago. His habeas petition, filed after the Fifth Circuit's decision in *Buenrostro-Mendez*, demands either his release or a bond hearing based on the Fifth Amendment's Due Process Clause. Dkt. No. 1 at 14.

As Ajrall recognizes, *Buenrostro-Mendez* forecloses a statutory challenge under the INA. But the Fifth Circuit did not expressly address due-process claims. That said, neither the substantive nor procedural veins of due process afford alien petitioners a bond hearing. Due process is a contextual concept, and in the context of alien removal, it is a limited one. Congress determined that aliens like Ajrall are not entitled to bond, but they are permitted to remain in U.S. custody and fight to remain here. That is more than sufficient process so far as the Due Process Clause is concerned. Therefore, the petition (Dkt. No. 1) is denied.

Because the facts and legal arguments presented in this petition are indistinguishable from those recently addressed by the Court in several prior cases, "it appears from the application that the applicant or person detained is not entitled" to a writ of habeas corpus.[1] 28 U.S.C. § 2243. Thus, while the Court would ordinarily issue an order to show cause, it exercises its discretion to forgo that step here. *Id.*; *see Wottlin v. Fleming*, 136 F.3d 1032, 1034 (5th Cir. 1998). The petition (Dkt. No. 1) is denied.

**1.    Background**

In May 2024, Ajrall illegally crossed into the United States near Tecate, California, and was quickly apprehended. *See* Dkt. No. 1-2 at 2. "Amidst a wave of illegal entries" and a "resulting lack of space to hold detainees," immigration officials released Ajrall into the United States on an order of recognizance. *Goyo Martinez*, 2026 WL 114418, at *1; *see* Dkt. No. 1-3 at 2–3. At the same time, Ajrall was placed into removal proceedings with a Notice to Appear. Dkt. No. 1-2 at 2. The NTA charged him with removability as "an alien present in the United States without being admitted or paroled." *Id.*; *see* 8 U.S.C. § 1182(a)(6)(A)(i). Ajrall has resided in the United States since his release. Dkt. No. 1 ¶ 47.

Last September, immigration officials detained Ajrall without bond. *See id.* ¶¶ 3, 5. His mandatory detention stemmed from the Board of Immigration Appeals' decision in *Matter of Yajure Hurtado*, which holds that aliens present in the United States without admission must be detained without bond under Section 1225(b)(2)(A) of the INA for the

---

[1] *See, e.g.*, *Higareda-Cano v. Noem*, No. 1:25-CV-225, 2026 WL 274495 (N.D. Tex. Jan. 30, 2026); *Goyo Martinez v. Villegas*, No. 1:25-CV-256, 2026 WL 114418 (N.D. Tex. Jan. 15, 2026); *Garibay-Robledo v. Noem*, __ F. Supp. 3d __, No. 1:25-CV-177, 2026 WL 81679 (N.D. Tex. Jan. 9, 2026); *Gomez Hernandez v. Lyons*, No. 1:25-CV-216, 2026 WL 31775 (N.D. Tex. Jan. 6, 2026); *Montelongo Zuniga v. Lyons*, ___ F. Supp. 3d ___, No. 1:25-CV-221, 2025 WL 3755126 (N.D. Tex. Dec. 29, 2025).

duration of their removal proceedings.  29 I. & N. Dec. 216, 220 (BIA 2025).[2]  Currently, Ajrall is detained at the Eden Detention Center in Eden, Texas.  Dkt. No. 1-5 at 2.

Because no immigration judge will grant bond, Ajrall seeks a writ of habeas corpus. Dkt. No. 1.  He concedes that *Buenrostro-Mendez* forecloses a statutory challenge to detention without bond.[3]  *Id.* ¶¶ 16, 33, 43.  But Ajrall argues that mandatory detention nevertheless violates his procedural due process rights.  *Id.* ¶¶ 36–45.

## 2. Legal Standard

"[A]bsent suspension, the writ of habeas corpus remains available to every individual detained within the United States."  *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const. art. I, § 9, cl. 2).  With 28 U.S.C. § 2241, Congress authorized federal courts to resolve habeas petitions, including in immigration-detention cases.  *Zadvydas v. Davis*, 533 U.S. 678, 687–88 (2001).  Habeas exists solely to "grant relief from unlawful imprisonment or custody."  *Pierre v. United States*, 525 F.2d 933, 935–36 (5th Cir. 1976).  Thus, for the writ to issue, the petitioner must be "in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c)(3); *see Orellana v. Kyle*, 65 F.3d 29, 31 (5th Cir. 1995).  A court considering a habeas petition must "determine the facts, and dispose of the matter as law and justice require."  28 U.S.C. § 2243.

---

[2] On February 18, 2026, the Central District of California purported to vacate *Yajure Hurtado* under the APA.  *Maldonado Bautista v. Santacruz*, No. 5:25-CV-1873, Dkt. No. 116, at 16 (C.D. Cal. Feb. 18, 2026).  But as the Court explained in *Calderon Lopez v. Lyons*, the Central District lacks authority to enter such relief.  __ F. Supp. 3d __, No. 1:25-CV-226, 2025 WL 3683918, at *10–14 (N.D. Tex. Dec. 19, 2025).  *Yajure Hurtado* binds immigration judges, meaning it would be "an exercise in futility" to seek a bond hearing.  *Garner v. U.S. Dep't of Lab.*, 221 F.3d 822, 825 (5th Cir. 2000).  Thus, Ajrall's petition does not present an exhaustion problem.  *Id.*

[3] Even if this Court were not bound by *Buenrostro-Mendez*, it would have reached the same result for the reasons discussed in its numerous prior decisions on this issue.  *Supra*, n.1.  Moreover, as the Court explained in *Goyo Martinez*, a petitioner remains an applicant for admission even if he was previously released into the United States on an order of recognizance.  2026 WL 114418, at *7.

3.  Analysis

Ajrall raises a single claim based on the Fifth Amendment's Due Process Clause. Dkt. No. 1 ¶¶ 34–45. The Court has repeatedly rejected identical due process arguments. *See supra*, n.1. Nevertheless, the Court considers the arguments raised in Ajrall's petition to address whether bond-less detention violates the Constitution. The answer is no.

    A.    **The Due Process Clause does not require the government to give Ajrall a bond hearing.**

Ajrall's procedural due process claim lacks merit. He seeks relief relying on the three-factor balancing test from *Mathews v. Eldridge*, 424 U.S. 319 (1976). *See* Dkt. No. 1 ¶¶ 54–59. The *Mathews* test, while common, is not the only tool for resolving procedural due process challenges. The Supreme Court said as much: "[W]e have never viewed *Mathews* as announcing an all-embracing test for deciding due process claims." *Dusenbery v. United States*, 534 U.S. 161, 168 (2002). In fact, the "Supreme Court when confronted with constitutional challenges to immigration detention has not resolved them through express application of *Mathews*." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206 (9th Cir. 2022).

The application of *Mathews* to Section 1226 cases is "unwarranted on the test's own terms." *Ladak v. Noem*, ___ F. Supp. 3d ___, No. 1:25-CV-194, 2025 WL 3764016, at *7 (N.D. Tex. Dec. 30, 2025). The Supreme Court applied *Mathews* in *Landon v. Plasencia*, emphasizing that its balancing test was appropriate for "long-time lawful permanent resident[s]" in contrast to "detentions of aliens at the border or returning lawful permanent residents who had spent time abroad." *Id.* (citing 459 U.S. 21, 32–34 (1982)). Aliens in the former category have "gain[ed] admission to our country and [have begun] to develop the ties that go with permanent residence," meriting a level of due process more analogous to that of a citizen. *Landon*, 459 U.S. at 32. In the latter category, aliens "request[] a privilege

and [have] no constitutional rights." *Id.*; *DHS v. Thuraissigiam*, 591 U.S. 103, 138–39 (2020) ("Whatever the procedure authorized by Congress is, it is due process as far as an alien denied entry is concerned.") (quotation omitted)). Critically, aliens who are released into the United States pending removal are "treated for due process purposes as if stopped at the border." *Thuraissigiam*, 591 U.S. at 139.

As an "applicant for admission," Ajrall has "only those rights regarding admission that Congress has provided by statute." *Id.* at 140; *Landon*, 459 U.S. at 32. With Section 1225, Congress set the procedural rights afforded to aliens who are present in the United States without admission. "Read most naturally," Section 1225(b)(2)(A) "mandate[s] detention of applicants for admission until certain proceedings have concluded." *Jennings v. Rodriguez*, 583 U.S. 281, 297 (2018). No part of the statute "says anything whatsoever about bond hearings." *Id.*

In any event, not even *Mathews* requires a bond hearing. Applying that test, courts consider: (1) the individual's private interest; (2) the risk of erroneous deprivation of the right absent further procedures; and (3) the government's interest. 424 U.S. at 335. "Ultimately, *Mathews* remains a flexible test that can and must account for the heightened governmental interest in the immigration detention context." *Rodriguez Diaz*, 53 F.4th at 1206 (citing *Landon*, 459 U.S. at 34).

Beginning with the first factor, Ajrall surely has a "profound" interest in freedom from detention. Dkt. No. 1 ¶ 55. But this liberty interest must be considered alongside the Supreme Court's clear admonition that "detention during deportation proceedings [i]s a constitutionally valid aspect of the deportation process." *Demore v. Kim*, 538 U.S. 510, 523 (2003). Next, Ajrall asserts with little explanation that the "risk of erroneous deprivation is

exceptionally high" because he has never been arrested and has ties to the community. Dkt. No. 1 ¶ 56. But even if Ajrall is right about factor two, the risk of erroneous deprivation is outweighed by the government's "sovereign prerogative[s]" in matters of immigration. *Landon*, 459 U.S. at 34. Thus, even if *Mathews* applies, Ajrall is not entitled to a bond hearing as a matter of procedural due process.[4]

**4.   Conclusion**

In short, Ajrall, as an "applicant for admission," is properly detained without bond under Section 1225(b)(2)(A). *Buenrostro-Mendez*, 2026 WL 323330, at *1. And the Due Process Clause does not require a bond hearing in these circumstances. Thus, the petition for a writ of habeas corpus (Dkt. No. 1) is denied.

The Clerk of Court is directed to serve this Order electronically on the United States Attorney's Office for the Northern District of Texas pursuant to the current Service of Process Agreement for federal habeas petitions under 28 U.S.C. § 2241.

So ordered on February 20, 2026.

*[signature]*

JAMES WESLEY HENDRIX
UNITED STATES DISTRICT JUDGE

---

[4] A substantive due process claim fares no better. That doctrine protects "only 'those fundamental rights and liberties which are, objectively, deeply rooted in this Nation's history and tradition.'" *Dep't of State v. Muñoz*, 602 U.S. 899, 910 (2024) (quoting *Washington v. Glucksberg*, 521 U.S. 702, 720–21 (1997)). While still recognizing due-process rights for aliens present in the United States, *see, e.g.*, *Trump v. J.G.G.*, 604 U.S. 670, 673 (2025), the Supreme Court has long affirmed the constitutionality of executive immigration procedures. The "through line of history," the Supreme Court recently explained, is "recognition of the Government's sovereign authority to set the terms governing the admission and exclusion of noncitizens." *Muñoz*, 602 U.S. at 911–12.